**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**UNITED STATES OF AMERICA**
**Plaintiff,**

**v.** **Case No. 25-CR-127**

**FRANK AYALA-DEJESUS**
**Defendant.**

---

## DECISION AND ORDER

The government charged defendant Frank Ayala-DeJesus with drug and firearm offenses. Defendant moved to suppress evidence recovered from his residence and vehicle pursuant to a search warrant. The magistrate judge handling pre-trial proceedings issued a recommendation that the motion be denied, rejecting defendant's arguments that the warrant application failed to establish probable cause and that the information in the application was stale. In the alternative, the magistrate judge found suppression would not be required under the good faith doctrine. Defendant objects, requiring me to review the matter de novo. See Fed. R. Crim. P. 59(b).

## I. BACKGROUND

The magistrate judge's report sets forth the background facts, drawn primarily from the warrant application, see United States v. Bell, 585 F.3d 1045, 1049 (7th Cir. 2009) ("When, as here, the affidavit is the only evidence provided to the judge in support of the search warrant, the validity of the warrant rests solely on the strength of the affidavit."), to which neither side has objected. I accordingly adopt that recitation (R. 193 at 1-6) and present an abbreviated version herein.

The officer-applicant submitted a 166-page affidavit in support of the warrant application, which described in detail the government's investigation of a drug trafficking organization (DTO) headed by Timothy Bea.[1] The DTO's activities centered at a bar owned and operated by Bea. Agents observed numerous trips by Bea's Illinois suppliers to the bar, ostensibly to transport drugs, which Bea then provided to others. Agents observed defendant at the bar at least 20 times, including during a July 2024 delivery by the supplier. Agents also intercepted a December 2024 call between Bea and a customer, in which Bea, on vacation at the time, told the customer "my boy" would handle the order. Immediately thereafter, Bea placed a call to defendant, and about an hour later agents saw defendant engage in a hand-to-hand exchange with the customer. The affidavit also identified defendant as a suspect in a February 2025 drug overdose. The overdose victim's associates told police her dealer was named "Franko," and after examining phone records agents identified defendant as Franko. Specifically, the records revealed that the victim and defendant communicated frequently throughout 2024 and early 2025, and during a call on February 13, 2025, the victim was heard asking defendant for drugs. Surveillance videos also showed defendant at or near the victim's apartment several times in February 2025. However, it appeared defendant was not the one who delivered the fatal dose. Finally, on April 17, 2025, Bea met with one of his suppliers in Kenosha County, and his first call thereafter was to defendant, followed by three other suspected DTO members. Law enforcement stopped Bea on his way back to Milwaukee, seizing a kilogram of heroin from his car. The magistrate judge issued the warrant to search defendant's residence and vehicle on June 13, 2025, and on execution agents seized drugs and a firearm.

---

[1]The affidavit supported a criminal complaint, arrest warrants for various individuals, and search warrants for several properties, including defendant's.

## II. SUPPRESSION STANDARDS

When a motion to suppress is based on a challenge to a search warrant, the reviewing court gives great deference to the issuing judge and will uphold his finding of probable cause so long as there was a substantial basis for concluding that a search would uncover evidence of a crime. United States v. Maxwell, 143 F.4th 844, 852 (7th Cir. 2025). "Probable cause is not a high standard. It simply means there is a reasonable likelihood evidence of wrongdoing will be found." United States v. Schenck, 3 F.4th 943, 946 (7th Cir. 2021). The Seventh Circuit has recognized that, in the case of drug dealers, evidence is likely to be found where the dealers live. United States v. Vizcarra-Millan, 15 F.4th 473, 501 (7th Cir. 2021). An issuing judge is also permitted to take the officer's experience into account in determining whether probable cause exists and may draw reasonable inferences about where evidence is likely to be found based on the nature of the evidence and the offense. United States v. Miles, 86 F.4th 734, 742 (7th Cir. 2023). Finally, while allegations remote in the time from the application may become too stale to support probable cause, passage of time is less critical when the affidavit refers to facts that indicate ongoing, continuous criminal activity. United States v. Jones, 184 F.4th 907, 912 (7th Cir. 2026).

If the reviewing court finds the warrant invalid, the evidence recovered may nevertheless be admitted at trial if the executing officer relied on the warrant in "good faith." United States v. Leon, 468 U.S. 897, 922 (1984). An officer's decision to obtain a warrant creates a presumption that the officer acted in good faith. United States v. Carrazco-Martinez, 166 F.4th 672, 677 (7th Cir. 2026). Overcoming this presumption is a heavy burden. Id. The presumption can be rebutted if the defendant shows that (1) the issuing judge abandoned his detached and neutral role; (2) the warrant was so lacking in probable cause that the officer's belief in its

existence was entirely unreasonable; or (3) the officer was dishonest or reckless in preparing the affidavit. United States v. Woodfork, 999 F.3d 511, 519 (7th Cir. 2021). Where, as here, the defendant relies on the second avenue, the court will admit the evidence "unless: (1) courts have clearly held that a materially similar affidavit previously failed to establish probable cause under facts that were indistinguishable from those presented in the case at hand; or (2) the affidavit is so plainly deficient that any reasonably well-trained officer would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." United States v. Koerth, 312 F.3d 862, 869 (7th Cir. 2002) (internal quote marks omitted).

## III. DISCUSSION

### A. Probable Cause

Defendant argues the affidavit said too little about him to support probable cause. (R. 195 at 2-4.) I disagree. Agents placed defendant at the bar, the locus of the DTO's operations, at least 20 times, including during a July 2024 visit by Bea's supplier. (Aff. [R. 1] ¶¶ 11(m), 49.) Agents also intercepted a December 2024 call from a customer to the vacationing Bea, who sent defendant to deliver drugs to the customer (who lived behind the bar). (Aff. ¶¶ 11(m), 140-46.) Agents further identified defendant as a supplier to the victim of a February 2025 drug overdose. (Aff. ¶¶ 11(m), 212-23.) Finally, after Bea obtained a drug shipment from his supplier in April 2025, his first call was to defendant. (Aff. ¶¶ 11(m), 242-43.) To be sure, the affidavit said more about some of the other alleged participants, but it provided a substantial basis for the issuing judge to conclude that defendant was "a very trusted associate" of Bea (Aff. ¶ 224), and that evidence would be found at defendant's residence.

Defendant notes that, while the affidavit purported to place him at the bar 20 times, just two of these instances were specifically discussed: the suspected July 2024 drug re-supply and the suspected December 2024 transaction between defendant and Bea's customer behind the bar. (R. 195 at 2.) Defendant further faults the affidavit for identifying no recorded calls between himself and Bea when agents had a Title III wiretap on Bea's phone for several months. (R. 195 at 3.) Finally, defendant argues no evidence supports the inference that defendant obtained the drugs he allegedly sold to the overdose victim from Bea. (R. 195 at 3.)

Probable cause "depends on the totality of the circumstances—'the whole picture'—not each fact in isolation." United States v. Rees, 957 F.3d 761, 766 (7th Cir. 2020). So considered, the affidavit provided a substantial basis for the issuing judge to conclude defendant was Bea's close associate. Bea trusted defendant to at least be present for the July 2024 delivery and re-supply of others (and to use the same back gait at the bar); he enlisted defendant ("my boy") to deliver drugs to a customer while he was on vacation; and he contacted defendant first (before other DTO members) when he obtained a new supply in April 2025. The absence of recorded calls on the wiretap is explained by the fact that Facetime calls (defendant and Bea's apparently preferred method of communication) are not captured through T-III interceptions. (Aff. ¶ 145.)

**B. Stale Information**

Defendant further argues the information in the warrant application was stale. He specifically takes issue with the magistrate judge's conclusion that the protracted and continuous nature of the activity diminished any timing concerns. Defendant contends that one hand-to-hand transaction six months before the warrant execution and one phone call two months earlier fail to reflect ongoing involvement. (R. 195 at 4.)

Again, I disagree. As summarized above, the affidavit described defendant's involvement at various stages of the investigation: the July 2024 delivery, the December 2024 transaction, and the April 2025 call.[2] The affidavit further showed that defendant regularly communicated with the overdose victim from July 2024 to February 2025. (Aff. ¶ 221.) Finally, the affiant averred that in his experience it is common for drug traffickers to maintain/conceal contraband, proceeds of drug sales, records of drug transactions, and other evidence in secure locations within their residences and areas within their control. (Aff. ¶¶ 5(h), 254; see also Aff. ¶ 5(p), stating it is common to maintain records "for lengthy periods of time".) These facts sufficed to support the search despite any passage of time. See Vizcarra-Millan, 15 F.4th at 502 (rejecting staleness argument based on three-month gap, given the defendant's repeated purchases and the affiant's experience).

**C. Good Faith**

Finally, defendant argues the good faith exception does not apply. (R. 195 at 4.) However, he fails to develop the argument. He does not, for instance, cite any decision finding a materially similar affidavit insufficient. Defendant contends the affidavit was "bare bones," but for the reasons stated above that is not so. Rather than resting on conclusory allegations, the affidavit referenced specific instances in which defendant appeared to participate in the DTO's

---

[2]In the original motion, defendant noted the absence of evidence that the DTO continued to operate after Bea's April 2025 arrest. (R. 179 at 8.) The magistrate judge reasoned that distributors sometimes obtain large quantities that may take months to sell; the arrest of one DTO member does not necessarily mean the others will desist; and even if the drugs dried up after Bea's arrest, that does not mean other evidence would no longer be present. (R. 193 at 13-14.) Defendant does not in his objections address these practical, common-sense observations. See Illinois v. Gates, 462 U.S. 213, 238 (1983) ("The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.").

affairs, supporting the assertion that he was a key associate to Bea. Even if I were to find the affidavit insufficient, good faith would apply. See United States v. Dismuke, 593 F.3d 582, 588 (7th Cir. 2010) ("This is not a case where the probable-cause determination rested on little more than a 'bare-bones' affidavit or entirely conclusory allegations."); United States v. Pless, 982 F.2d 1118, 1126 (7th Cir. 1992) ("Given the extent of the information contained in the affidavit, we cannot conclude that it was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.") (internal quote marks omitted).

## IV. CONCLUSION

**THEREFORE, IT IS ORDERED** that the magistrate judge's recommendation (R. 193) is adopted, and defendant's motion to suppress (R. 179) is denied.

Dated at Milwaukee, Wisconsin, this 22nd day of September, 2026.

/s/ Lynn Adelman
LYNN ADELMAN
District Judge